No. 21-11930

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————

CAFE INTERNATIONAL HOLDING COMPANY LLC,
*Plaintiff-Appellant*,

v.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,
*Defendant-Appellee.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
No. 1:20-cv-21641-JG
The Honorable Jonathan Goodman, Magistrate Judge

———————

## DEFENDANT-APPELLEE'S ANSWERING BRIEF

Steven J. Brodie
Heidi Hudson Raschke
Andrew K. Daechsel
CARLTON FIELDS, P.A.
2 MiamiCentral, Suite 1200
700 NW 1st Avenue
Miami, Florida 33136
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

Jonathan D. Hacker
Jeremy R. Girton
O'MELVENY & MYERS LLP
1625 Eye St., NW
Washington, DC 20006
(202) 383-5300
jhacker@omm.com
jgirton@omm.com

*Attorneys for Defendant-Appellee*
*Westchester Surplus Lines Insurance Company*

# CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1(a)(3), Defendant-Appellee

Westchester Surplus Lines Insurance Company ("Westchester") notifies the Court

that the following persons may have an interest in the outcome of this appeal:

1. Boies, David

2. Boies, Schiller, Flexner LLP

3. Brodie, Steven J.

4. Bucciero, Lea P.

5. Burton, Allen W.

6. Cafe International Holding Company LLC

7. Carlton Fields, P.A.

8. Chubb Limited (CB)

9. Daechsel, Andrew K.

10. Girton, Jeremy

11. Godesky, Leah

12. Goetz, Richard Blair

13. Goodman, Jonathan, Magistrate Judge

14. Gravante, Nicholas A.

15. Hacker, Jonathan

16. Infante, Kristina M.

17. Laurendeau, Amy J.

18. Lee, James W.

19. Louis, Marshal Dore

20. Marks, Steven C.

21. Martinez, Christina H.

22. O'Melveny & Myers, LLP

23. Petrocelli, Daniel M.

24. Podhurst Orseck, P.A.

25. Podhurst, Aaron S.

26. Raschke, Heidi Hudson

27. Rojas, Pablo

28. Rosenthal, Stephen F.

29. Weil, Bruce Alan

30. Weinshall, Matthew

31. Westchester Surplus Lines Insurance Company

32. Zack, Stephen N.

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, Appellee states that Westchester Surplus Lines Insurance Company (a Georgia corporation) is a wholly owned subsidiary of Chubb US Holdings Inc. (a Delaware corporation). Chubb US Holdings Inc. is a

wholly owned subsidiary of Chubb Group Holdings Inc. (a Delaware corporation). Chubb Group Holdings Inc. is a wholly owned subsidiary of Chubb Limited (a Swiss company). Chubb Limited is the ultimate parent and a publicly traded company, listed on the NYSE under the ticker symbol CB. No publicly-traded company owns 10% or more of Chubb Limited's stock.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
    DISCLOSURE STATEMENT ...................................................................i

STATEMENT REGARDING ORAL ARGUMENT .............................................xi

INTRODUCTION ...........................................................................................1

STATEMENT OF THE ISSUE ..............................................................................3

STATEMENT OF THE CASE ................................................................................3

    A.    The Westchester Policy ...........................................................3

    B.    Cafe International's Claimed Business Losses ...............................5

    C.    Procedural History ....................................................................6

    D.    Standard Of Review .................................................................7

SUMMARY OF THE ARGUMENT ..........................................................................9

ARGUMENT ....................................................................................................10

I.    There Is No Business Interruption Or Extra Expense Coverage
    Because There Was No Direct Physical Loss Of Or Damage To Cafe
    International's Premises ...........................................................10

    A.    The Policy Requires An "Actual Change" To The Property ............10

    B.    Cafe International Cannot Allege An Actual Change To Its
    Property ...............................................................................14

II.    Cafe International's Counterarguments Lack Merit ....................................18

    A.    The Policy Does Not Cover "Loss of Use" Unaccompanied By
    An Actual, Physical Change ...................................................19

    B.    *Mama Jo's* Correctly Interpreted Florida Law .............................24

    C.    Cafe International's Exclusion-Based Arguments Fail ...................28

III.    There Is No Basis For Certification To The Florida Supreme Court ..........33

CONCLUSION ...................................................................................................34

# TABLE OF CITATIONS

Page(s)

## Cases

*15 Oz Fresh & Healthy Food LLC v. Underwriters at Lloyd's London*,
2021 WL 896216 (S.D. Fla. Feb. 22, 2021) ................................................. 16, 20

*4431, Inc. v. Cincinnati Ins. Cos.*,
2020 WL 7075318 (E.D. Pa. Dec. 3, 2020)........................................................32

*AE Mgmt., LLC v. Ill. Union Ins. Co.*,
2021 WL 827192 (S.D. Fla. Mar. 4, 2021).........................................................16

*AFLAC Inc. v. Chubb & Sons, Inc.*,
581 S.E.2d 317 (Ga. App. 2003).........................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................8

*Atma Beauty, Inc. v. HDI Glob. Specialty SE*,
2020 WL 7770398 (S.D. Fla. Dec. 30, 2020).....................................................16

*Atma Beauty, Inc. v. HDI Glob. Specialty SE*,
2021 WL 4170476 (S.D. Fla. Sept. 13, 2021) ....................................................15

*Auto-Owners Ins. Co. v. Anderson*,
756 So. 2d 29 (Fla. 2000).....................................................................................8

*Azalea, Ltd. v. Am. States Ins. Co.*,
656 So. 2d 600 (Fla. 1st DCA 1995) ............................................................ 25, 26

*Bel Air Auto Auction, Inc. v. Great N. Ins. Co.*,
2021 WL 1400891 (D. Md. Apr. 14, 2021)........................................................32

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................8

*Bourgier v. Hartford Cas. Ins. Co.*,
2021 WL 3603601 (S.D. Fla. Aug. 12, 2021) ....................................................15

*Cafe La Trova LLC v. Aspen Specialty Ins. Co.*,
519 F. Supp. 3d 1167 (S.D. Fla. 2021) ......................................................... 16, 32

*Carrot Love, LLC v. Aspen Specialty Ins. Co.*,
513 F. Supp. 3d 1364 (S.D. Fla. 2021) ...............................................................16

*Clay Hotel P'ship, Ltd. V, Toko Marine Kiln Synd. 1880*,
2021 WL 5410243 (S.D. Fla. Nov. 17, 2021) .....................................................15

**Page(s)**

*Curtis O. Griess & Sons, Inc. v. Farm Bureau Ins. Co. of Neb.*,
528 N.W.2d 329 (Neb. 1995)..................................................33

*DAB Dental PLLC v. Main St. Am. Prot. Ins. Co.*,
2020 WL 7137138 (Fla. Cir. Ct. Nov. 10, 2020)...................... 15, 34

*Dakota Girls, LLC v. Phila. Indem. Ins. Co.*,
2021 WL 5144465 (6th Cir. Nov. 5, 2021)............................14

*Davila v. Delta Air Lines, Inc.*,
326 F.3d 1183 (11th Cir. 2003) ...........................................8

*Davis v. Nat'l Med. Enters., Inc.*,
253 F.3d 1314 (11th Cir. 2001) ...........................................8

*Digital Age Mktg. Grp., Inc. v. Sentinel Ins. Co. Ltd.*,
512 F. Supp. 3d 1270 (S.D. Fla. 2021) .................................16

*Dime Fitness, LLC v. Markel Ins. Co.*,
2020 WL 6691467 (Fla. Cir. Ct. Nov. 10, 2020).................... 15, 34

*Edison Kennedy, LLC v. Scottsdale Ins. Co.*,
510 F.Supp.3d 1116 (M.D. Fla. Jan. 4, 2021) ......................16

*El Novillo Rest. v. Certain Underwriters at Lloyd's, London*,
2020 WL 7251362 (S.D. Fla. Dec. 7, 2020) ..................... 13, 16, 32

*Essex Ins. Co. v. BloomSouth Flooring Corp.*,
562 F.3d 399 (1st Cir. 2009) .............................................21

*First Watch Rests., Inc. v. Zurich Am. Ins. Co.*,
2021 WL 390945 (M.D. Fla. Feb. 4, 2021) ..........................16

*Florida ex rel. Shevin v. Exxon Corp.*,
526 F.2d 266 (5th Cir. 1976)..............................................34

*Frontier Dev., LLC v. Endurance Am. Specialty Ins. Co.*,
2021 WL 4127395 (S.D. Fla. Sept. 8, 2021) ........................15

*Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*,*
2021 WL 3870697 (11th Cir. Aug. 31, 2021) .......................... *passim*

*Gio Pizzeria & Bar Hosp., LLC v. Certain Underwriters at Lloyd's, London*,
2021 WL 2767077 (S.D. Fla. June 3, 2021) ..........................15

*Graspa Consulting, Inc. v. United Nat'l Ins. Co.*,
  2021 WL 1540907 (S.D. Fla. Apr. 16, 2021) ....................................15

*Graspa Consulting, Inc. v. United Nat'l Ins. Co.*,
  515 F. Supp. 3d 1249 (S.D. Fla. Jan. 20, 2021)...............................16

*Homeowners Choice Prop. & Cas. v. Maspons*,*
  211 So. 3d 1067 (Fla. 3d DCA 2017) .............................. 11, 26, 27, 34

*Hotel Props., Ltd. v. Heritage Ins. Co. of Am.*,
  456 So. 2d 1249 (Fla. 3d DCA 1984) ...............................................28

*Ice House Pub, Inc. v. Westchester Surplus Lines Ins. Co.*,
  2021 WL 3169151 (M.D. Fla. July 26, 2021) ...................................15

*Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*,
  512 F. Supp. 3d 1323 (S.D. Fla. 2021) ....................................... 11, 16

*Jennings v. BIC Corp.*,
  181 F.3d 1250 (11th Cir. 1999) .........................................................8

*Kamakura, LLC v. Greater N.Y. Mut. Ins. Co.*,
  2021 WL 1171630 (D. Mass. Mar. 9, 2021).....................................32

*LaFarge Corp. v. Travelers Indem. Co.*,
  118 F.3d 1511 (11th Cir. 1997) .........................................................8

*Luke v. Gulley*,
  975 F.3d 1140 (11th Cir. 2020) .........................................................4

*Malaube, LLC v. Greenwich Ins. Co.*,
  2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) ...................................13

*Mama Jo's Inc. v. Sparta Ins. Co.*,*
  823 F. App'x 868, (11th Cir. 2020), *cert. denied*, 141 S. Ct. 1737
  (2021) ...................................................................................... passim

*Map Legacy, Inc. v. Zurich Am. Ins. Co.*,
  2021 WL 3928944 (S.D. Fla. Sept. 1, 2021) ....................................15

*MCML Holding Co., LLC v. Colony Ins. Co.*,
  2021 WL 2766870 (M.D. Fla. May 12, 2021)....................................15

*Mena Catering, Inc. v. Scottsdale Ins. Co.*,
  512 F. Supp. 3d 1309 (S.D. Fla. 2021) .............................................16

*Mignonette Miami, LLC v. Tokio Marine Specialty Ins. Co.*,
  2021 WL 2661152 (S.D. Fla. June 29, 2021) ....................................15

*Mike's Lounge & Package, Inc. v. Wilshire Ins. Co.*,
  2021 WL 4859393 (S.D. Fla. Oct. 18, 2021) ....................................15

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,*
  2021 WL 4486509 (9th Cir. Oct. 1, 2021)................................. 13, 14

*Oral Surgeons, P.C. v. Cincinnati Ins. Co.*,*
  2 F.4th 1141 (8th Cir. 2021) ......................................... 14, 19

*Perez v. Wells Fargo N.A.*,
  774 F.3d 1329 (11th Cir. 2014) ......................................7

*PF Sunset View, LLC v. Atl. Specialty Ins. Co.*,
  2021 WL 1341602 (S.D. Fla. Apr. 9, 2021) ....................................15

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*,
  311 F.3d 226 (3d Cir. 2002)...................................... 21, 31

*Prime Time Sports Grill, Inc. v. DTW 1991 Underwriting Ltd.*,
  2020 WL 7398646 (M.D. Fla. Dec. 17, 2020)....................................16

*Promotional Headwear v. Cincinnati Ins. Co.*,
  504 F. Supp. 3d 1191 (D. Kan. Dec. 3, 2020) ....................................32

*R.T.G. Furniture Corp. v. Hallmark Speciality Ins. Co.*,
  2021 WL 686864 (M.D. Fla. Jan. 22, 2021)................................. 16, 18

*Ramada Inn Ramogreen, Inc. v. Travelers Indem. Co. of Am.*,
  835 F.2d 812 (11th Cir. 1988) ....................................28

*Rando v. Gov't Emps. Ins. Co.*,
  556 F.3d 1173 (11th Cir. 2009) ....................................8

*Rococo Steak, LLC v. Aspen Specialty Ins. Co.*,
  515 F. Supp. 3d 1218 (M.D. Fla. 2021)................................. 16, 18

*Royal Palm Optical, Inc. v. State Farm Mut. Auto. Ins. Co.*,
  2021 WL 1220750 (S.D. Fla. Mar. 30, 2021)................................. 15, 16

*Runway 84, Inc. v. Certain Underwriters at Lloyd's, London*,
  2021 WL 2767079 (S.D. Fla. Mar. 31, 2021)....................................15

Page(s)

*S. Fla. Ent Assocs., Inc. v. Hartford Fire Ins. Co.*,
  2020 WL 6864560 (S.D. Fla. Nov. 13, 2020) ....................................................16

*SA Palm Beach LLC v. Certain Underwriters at Lloyd's, London*,
  2020 WL 7251643 (S.D. Fla. Dec. 9, 2020) ......................................................16

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*,
  488 F. Supp. 3d 690 (N.D. Ill. 2020) ................................................................32

*Santo's Italian Cafe LLC v. Acuity Ins. Co.*,*
  15 F.4th 398 (6th Cir. 2021) ............................................................ 13, 14, 19, 23

*Scherder v. Aspen Am. Ins. Co.*,
  2021 WL 3550368 (M.D. Fla. Aug. 11, 2021) ..................................................15

*Selane Prods., Inc. v. Cont'l Cas. Co.*,*
  2021 WL 4496471 (9th Cir. Oct. 1, 2021)..........................................................15

*Siegle v. Progressive Consumers Ins. Co.*,
  819 So. 2d 732 (Fla. 2002)......................................................................... 29, 31

*Spottswood Companies, Inc. v. Zurich Am. Ins. Co.*,
  2021 WL 2515255 (S.D. Fla. June 14, 2021) ....................................................15

*State Farm Fire & Cas. Co. v. Steinberg*,
  393 F.3d 1226 (11th Cir. 2004) ..........................................................................8

*Sun Cuisine, LLC v. Certain Underwriters at Lloyd's London*,
  2020 WL 7699672 (S.D. Fla. Dec. 28, 2020)....................................................20

*Sun Cuisine, LLC v. Certain Underwriters at Lloyd's London*,
  2021 WL 3883920 (S.D. Fla. Aug. 31, 2021) ....................................................15

*Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*,
  913 So. 2d 528 (Fla. 2005)..................................................................................8

*Toomey v. Wachovia Ins. Servs., Inc.*,
  450 F.3d 1225 (11th Cir. 2006) ........................................................................34

*Town Kitchen LLC v. Certain Underwriters at Lloyd's, London*,
  2021 WL 768273 (S.D. Fla. Feb. 26, 2021) ........................................... 16, 18, 20

*Universal Image Prods., Inc. v. Fed. Ins. Co.*,
  475 F. App'x 569 (6th Cir. 2012) ......................................................................18

Page(s)

*Vazquez v. Citizens Prop. Ins. Corp.*,\*
  304 So. 3d 1280 (Fla. 3d DCA 2020) ........................................................... 11, 34

*Vencor Hosps. v. Blue Cross Blue Shield of R.I.*,
  284 F.3d 1174 (11th Cir. 2002) ...................................................................31

*Washington v. Rivera*,
  939 F.3d 1239 (11th Cir. 2019) ....................................................................7

*Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*,
  499 F. Supp. 3d 670 (N.D. Cal 2020) ...........................................................32

*Webb Dental Assocs. DMD PA v. Cincinnati Indem. Co.*,
  2021 WL 800113 (N.D. Fla. Jan. 15, 2021) ....................................................16

*Weiss v. City of Gainesville*,
  462 F. App'x 898 (11th Cir. 2012) ...............................................................34

*Yellow Strawberry CCDR, Inc. v. Cont'l Cas. Co.*,
  2021 WL 2766996 (S.D. Fla. May 18, 2021) ...................................................15

**Constitutional Provisions**

Fla. Const. art. V, § 3(b)(6)...........................................................................33

**Statutes**

Fla. Stat. § 25.031 ......................................................................................33

**Rules**

Fed. R. Civ. P. 10(c)......................................................................................4

**Other Authorities**

10 Couch on Insurance § 148:46 (3d ed. 1998)..................................................21

Broward Cnty. Adm'r's Emergency Order 20-03 (Mar. 26, 2020).........................6

Miami-Dade Cnty. Emergency Order 03-20 (Mar. 17, 2020)................................6

Miami-Dade Cnty. Emergency Order 07-20 (Mar. 19, 2020)................................6

State of Fla. Exec. Order No. 20-68 (Mar. 17, 2020) ..........................................6

State of Fla. Exec. Order No. 20-70 (Mar. 20, 2020) ..........................................6

State of Fla. Exec. Order No. 20-71 (Mar. 20, 2020) ..........................................6

State of Fla. Exec. Order No. 20-89 (Mar. 30, 2020) ..........................................6

## STATEMENT REGARDING ORAL ARGUMENT

Cafe International has requested oral argument in this case. Westchester submits that oral argument is unnecessary. The appeal involves the application of well-established insurance principles to unambiguous policy language and factual allegations not in dispute. And the facts and legal arguments relevant to the appeal are adequately presented in the briefs and record on file in the suit. Westchester accordingly believes that the Court's decisional process would not be significantly aided by oral argument.

**INTRODUCTION**

This is one of thousands of lawsuits throughout the country seeking coverage under property insurance policies for economic losses caused by the COVID-19 pandemic and by pandemic-related government restrictions on business operations. Courts have overwhelmingly dismissed such claims at the pleading stage where, as here, the policy language covers only losses caused by "direct physical loss of or damage to" to property at the insured premises. That language requires a tangible alteration to the insured property, and a government restriction on business operations to limit the spread of coronavirus does not tangibly alter property. The restriction is no different than any other government regulation, such as an ordinance requiring bars to close at midnight to reduce neighborhood disruption. This Court has already affirmed one such dismissal on that basis. The same principle applies here, as the district court correctly recognized.

Westchester Surplus Lines Insurance Company ("Westchester") issued a commercial property insurance policy to Cafe International covering property at its Fort Lauderdale restaurant. The policy provides Business Income and Extra Expense coverage where there is "direct physical loss of or damage to" insured property at the restaurant's premises. Applying Florida law, this Court recently held that there is no direct physical loss of or damage to property unless the property itself has undergone a physical alteration, as in a fire or collapse. *See*

*Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 1737 (2021). Even more recently, this Court applied that principle to virtually identical policy language under Georgia law, rejecting coverage because neither the coronavirus itself nor related actions by civil authorities causes "physical loss or damage" to property. *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021).

There is no basis for a different result here. Just like the insureds in *Mama Joe's* and *Gilreath*, Cafe International seeks coverage for economic losses allegedly caused by the temporary presence of a foreign substance and related government regulations, but it does not allege any facts establishing a physical change to its restaurant property. The facts alleged here are identical to fleeting contamination by flu viruses and common-cold coronaviruses, yet no business has ever obtained property-damage coverage for the economic losses commonly experienced during cold and flu season.

To be sure, the COVID-19 virus differs from flu and cold viruses in its effect on *people*. But its effect on *property* is exactly the same. The comparison shows why, despite the unique social upheaval of the COVID-19 pandemic, the contractual interpretation issue here should be uncontroversial. Cafe International's policy does not cover businesses losses in general—it covers losses

caused by a *physical alteration of the insured property*.  And Cafe International has not alleged the COVID-19 virus physically altered its property.  For that reason, since the pandemic began, every reasoned decision analyzing this provision under Florida law—in 40 separate rulings—has rejected Cafe International's theory of coverage.  *See infra* note 5.  So has this Court in *Gilreath*, and so have the Courts of Appeals for the Sixth, Eighth, and Ninth Circuits.  *See infra* at 14-15.  And because Cafe International does not and cannot offer any additional facts that would remedy the complaint's fatal legal flaws, the district court fairly exercised its discretion to deny leave to amend.  The order of dismissal with prejudice should be affirmed.

## STATEMENT OF THE ISSUE

Whether the district court properly entered judgment on the pleadings dismissing Cafe International's Business Interruption and Extra Expense claims because Cafe International does not and cannot allege facts establishing direct physical loss of or damage to its premises.

## STATEMENT OF THE CASE

### A.    The Westchester Policy

Westchester issued a commercial property insurance policy to Cafe International for the policy period from November 29, 2019, to November 29,

2020.  Compl. (ECF No. 1) ¶ 1, 19; *see* Policy (ECF No. 1-1) at 2, 6.[1]  The policy insures Cafe International's premises, IT Italy, a restaurant in Fort Lauderdale, Florida.  Compl. (ECF No. 1) ¶ 19; Policy (ECF No. 1-1) at 5, 7.

The policy provides two types of coverage relevant here:  Business Income and Extra Expense.[2]  The Business Income provision calls for Westchester to pay Cafe International for certain losses of income if Cafe International had to suspend operations due to "direct physical loss of or damage to" the covered premises.  Policy (ECF No. 1-1) at 51.  The Extra Expense provision similarly provides coverage for extra expenses incurred due to "direct physical loss or damage to property."  *Id.* at 51-52.  Both the Business Income and Extra Expense provisions provide coverage only so long as the property's "period of restoration" lasts.  For Business Income coverage, the period of restoration is deemed to begin "72 hours after the time of direct physical loss or damage," and for Extra Expense coverage, the period begins "Immediately after the time of direct physical loss or damage."  *Id.* at 59.  For both provisions, the property's "restoration" period is deemed to end on the earlier of the "date when the property at the described premises should be

---

[1] The policy is incorporated into the complaint itself.  *See* Fed. R. Civ. P. 10(c); *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020).

[2] Cafe International originally brought a claim under a provision providing Civil Authority coverage, but it has abandoned that claim on appeal.  Br. 6 n.2.

repaired, rebuilt or replaced with reasonable speed and similar quality" or the "date when business is resumed at a new permanent location." *Id.*

## B. Cafe International's Claimed Business Losses

Cafe International filed suit on April 20, 2020, asserting claims for breach of contract and declaratory judgment on the theory that it is entitled to Business Income and Extra Expense coverage from Westchester for certain economic losses Cafe International allegedly suffered during the coronavirus pandemic. The complaint alleges that, in March 2020, Cafe International was "forced to suspend business operations at [its] restaurant, as a result of COVID-19" and three civil-authority orders issued by the Governor of Florida allegedly "prohibiting public access" to the restaurant. *See* Compl. (ECF No. 1) ¶¶ 8, 39-41, 44, 46. It also alleges a legal conclusion—unsupported by any factual allegations—that the suspension of Cafe International's business operations resulted from the "presence of COVID-19 caus[ing] direct physical loss of and/or damage to" Cafe International's restaurant. *Id.* ¶¶ 43, 45, 74, 84, 94.

The three civil-authority orders cited in the complaint did not prohibit access to Cafe International's restaurant; rather, the orders allowed the restaurant to remain open for providing delivery, pick-up, and takeout services and permitted employees, janitorial personnel, contractors, and delivery personnel to continue accessing the restaurant. *See id.* ¶¶ 39-41, 44, 46; *see also, e.g.*, State of Fla. Exec.

Order No. 20-68, at 2-3 (Mar. 17, 2020) (imposing capacity limitations on restaurants but allowing them to stay open); State of Fla. Exec. Order No. 20-70, at 2 (Mar. 20, 2020) (requiring restaurants "to close on-premises service of customers" while permitting "such establishments [to] operate their kitchens for the purpose of providing delivery … , pick-up or take out services" and allowing "employees, janitorial personnel, contractors and delivery personnel" to access such establishments); State of Fla. Exec. Order No. 20-89, at 2 (Mar. 30, 2020) (restricting public access to non-essential businesses and imposing social distancing measures on essential establishments).[3]

## C.    Procedural History

On May 4, 2021, the district court granted Westchester's motion for judgment on the pleadings.  Order (ECF No. 86).  The court acknowledged Cafe International's "creativity" in trying to justify coverage, but the court found each argument foreclosed by the plain language of the policy.  *Id.* at 1.

The claims for Business Interruption and Extra Expense coverage failed as a matter of law, the court held, because the novel coronavirus "does not cause direct loss or damage to a property sufficient to trigger coverage." *Id.* at 2; *see id.* at 14-

---

[3] No other state or county order in response to the coronavirus pandemic prohibited access to Cafe International's insured premises either.  *See* State of Fla. Exec. Order No. 20-71, at 4 (Mar. 20, 2020); Broward Cnty. Adm'r's Emergency Order 20-03, at 5 (Mar. 26, 2020); Miami-Dade Cnty. Emergency Order 07-20, at 2-3 (Mar. 19, 2020); Miami-Dade Cnty. Emergency Order 03-20 (Mar. 17, 2020).

27.  As support for this conclusion, the court observed that the overwhelming majority of decisions within this Circuit and across the country have reached the same conclusion concerning the same policy language.  *See id.* at 14-17 (collecting cases).  The court also noted that during a multi-hour oral argument, Cafe International's counsel was "unable to provide any specific facts to support the conclusory allegation of coronavirus physical damage to the restaurant."  *Id.* at 2.  And the court rejected the contention that the presence of specific "virus exclusions" in *other* insurance policies created affirmative coverage under Cafe International's policy.  *Id.* at 2-3, 23-27.  Because Cafe International did not proffer any specific allegations that would make the complaint viable, the court denied leave to amend.  *Id.* at 29-30.

### D.    Standard Of Review

This Court reviews the district court's grant of Westchester's motion for judgment on the pleadings de novo.  *See Washington v. Rivera*, 939 F.3d 1239, 1242 (11th Cir. 2019).  "Judgment on the pleadings is appropriate when no material facts are in dispute and the movant is entitled to judgment as a matter of law."  *Id.*  In evaluating the motion, the Court "accept[s] as true all material facts alleged in the non-moving party's pleading" and "view[s] those facts in the light most favorable to the non-moving party."  *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).  To survive, the complaint must allege "enough facts

to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Conclusory allegations, unwarranted factual deductions, and "legal conclusions masquerading as facts," *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003), "are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Under Florida law, which governs here,[4] Cafe International bears the burden of proving that it is entitled to coverage. *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997). Coverage is determined by "the plain language of the policy, as bargained for by the parties." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005) (quotation omitted).

The Court reviews a denial of leave to amend for abuse of discretion. *See Jennings v. BIC Corp.*, 181 F.3d 1250, 1254 (11th Cir. 1999).

---

[4] *See Rando v. Gov't Emps. Ins. Co.*, 556 F.3d 1173, 1176 (11th Cir. 2009). In applying Florida law, this Court must "adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Davis v. Nat'l Med. Enters., Inc.*, 253 F.3d 1314, 1319 n.6 (11th Cir. 2001).

## SUMMARY OF THE ARGUMENT

This Court's decisions in *Mama Jo's* and *Gilreath* foreclose Cafe International's claims for Business Interruption and Extra Expense coverage. *Mama Jo's* involved a Florida insurance policy with identical coverage language, and this Court held that the unwanted presence of a substance that merely requires cleaning does not cause direct physical loss of or damage to property. *Gilreath* involved a Georgia policy that likewise required "direct physical loss or damage," and the Court held that neither the presence of the novel coronavirus nor shelter-in-place orders satisfied that requirement. Every decision of this Court's sister circuits is in accord, as is every reasoned opinion, state or federal, analyzing the question under Florida law.

Cafe International's arguments for evading the plain language of the policy and diverging from the overwhelming contrary authority lack merit. The absence of a virus exclusion in Cafe International's policy is irrelevant because there is no coverage in the first place. And there is no need to certify this case to the Florida Supreme Court because there is no reasonable dispute about the issue: In an unbroken series of at least 40 rulings, every single state and federal court to have addressed the question under Florida law has returned the same result. The judgment for Westchester should be affirmed.

**ARGUMENT**

**I.     THERE IS NO BUSINESS INTERRUPTION OR EXTRA EXPENSE
COVERAGE BECAUSE THERE WAS NO DIRECT PHYSICAL
LOSS OF OR DAMAGE TO CAFE INTERNATIONAL'S PREMISES**

This Court's decisions in *Mama Jo's* and *Gilreath* mark a clear path to

affirmance here.  Like the policies at issue in those cases, Cafe International's

policy provides Business Income and Extra Expense coverage only when there is

"direct physical loss of or damage to" the insured property.  Policy (ECF No. 1-1)

at 51.  And similar to the insureds in *Mama Jo's* and *Gilreath*, Cafe International

does not allege facts establishing that the coronavirus, or the related government

orders designed to curb viral spread among *people*, caused any physical change to

the *property* insured by Westchester's policy.  At most Cafe International asserts

only the conclusory allegation that "physical change" occurred without any

concrete factual allegation of what tangible change actually occurred.  The district

court was correct to join the unanimous chorus of courts dismissing these types of

claims at the pleading stage under Florida law.

**A.     The Policy Requires An "Actual Change" To The Property**

Last year, in a case arising before the COVID-19 pandemic struck the world,

this Court held that under Florida law, the phrase "direct physical loss of or

damage to Covered Property" requires "an actual change in insured property."

*Mama Jo's*, 823 F. App'x at 879.  In that case, a restaurant sought coverage for

business income losses caused by dust and debris generated by nearby

10

construction. The intruding dust required the restaurant to repaint the walls and to temporarily close sections of the restaurant for cleaning using ordinary cleaning methods, but the dust did not physically alter the insured property itself. *See id.* at 871-72, 880. This Court held that business losses from the temporary presence of dust were not covered because "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Id.* at 879.

Although *Mama Jo's* was unpublished, federal courts applying Florida law to insurance policies with the same language—like Cafe International's policy here—have universally followed the decision's analysis. *See*, *e.g.*, *Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*, 512 F. Supp. 3d 1323, 1326 (S.D. Fla. 2021); *see infra* note 5. Florida courts likewise agree that, because the words "direct" and "physical" modify both "loss" and "damage," there must be some "actual" physical change to the covered property before coverage can attach. *See Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017); *Vazquez v. Citizens Prop. Ins. Corp.*, 304 So. 3d 1280, 1284 (Fla. 3d DCA 2020). Thus, a policy like Cafe International's does not cover the intrusion of an unwanted substance that does not actually change the property, even if the substance causes a temporary diminution in the ability to use the property for a particular purpose while it is cleaned.

This Court recently reaffirmed this textual analysis in the context of the COVID-19 pandemic. In *Gilreath*, a Georgia dental practice sought coverage for pandemic-related lost business income under a property insurance policy that tied coverage to "accidental physical loss or accidental physical damage." *Gilreath*, 2021 WL 3870697, at *1. This Court explained that the "common meaning" of this phrase requires "'an actual change in insured property' that either makes the property 'unsatisfactory for future use' or requires 'that repairs be made.'" *Id.* at *2 (quoting *AFLAC Inc. v. Chubb & Sons, Inc.*, 581 S.E.2d 317, 319 (Ga. App. 2003)). Thus, contrary to Cafe International's assertions, *see, e.g.*, Br. 32, Georgia and Florida both interpret the policy language here as requiring an "actual change" to the property. Like the restaurant in *Mama Jo's*, the dental practice in *Gilreath* could not allege an "actual change" by pointing to shelter-in-place orders that required it to postpone elective procedures or to the presence of the coronavirus itself at the property. Even if coronavirus particles were present on the property, this Court could "not see how the presence of those particles would cause physical damage or loss to the property." *Id.* In short, the dental practice "alleged nothing that could qualify, to a layman or anyone else, as physical loss or damage" because it did not allege facts establishing an actual change to the property. *Id.*

Other aspects of Cafe International's policy confirm that the phrase "direct physical loss of or damage to" property requires an actual change to the property

for there to be coverage. For instance, the policy provides Business Income and Extra Expense coverage only during the "period of restoration," which ends when the property is either "repaired, rebuilt or replaced" or Cafe International's business resumes at a "new permanent location." Policy (ECF No. 1-1) at 59. The "period of restoration" provision thus contemplates the kind of tangible alteration to property that is capable of being "repaired, rebuilt or replaced," or is so complete that the business must be entirely relocated. *See, e.g.*, *Malaube, LLC v. Greenwich Ins. Co.*, 2020 WL 5051581, at *9 (S.D. Fla. Aug. 26, 2020); *El Novillo*, 2020 WL 7251362, at *6. That language does not contemplate coverage being provided when a foreign substance is present that can simply be cleaned up without repairs, replacement, or relocation. The "period of restoration" provision thereby confirms that "direct physical loss of or damage to" does not encompass the temporary intrusion of a substance that both exists, and may be eliminated, without any physical changes to the property itself. *See, e.g.*, *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2021 WL 4486509, at *5 (9th Cir. Oct. 1, 2021) ("To interpret the Policy to provide coverage absent  physical damage would render the 'period of restoration' clause superfluous."); *Santo's Italian Cafe LLC v. Acuity Ins. Co.*, 15 F.4th 398, 403 (6th Cir. 2021) (similar).

**B.   Cafe International Cannot Allege An Actual Change To Its Property**

Applying the "actual change" standard, Cafe International's claim for coverage clearly fails.  Like the restaurant in *Mama Jo's* and the dental office in *Gilreath*, Cafe International does not and cannot plausibly allege any direct physical loss of or damage to its insured property.  Cafe International at best alleges that the coronavirus was present *on* its property, but it cannot allege facts establishing that the coronavirus caused any physical changes *to* its insured property, much less any physical changes that necessitated repairing, rebuilding, or replacing the property on which the virus was allegedly present.  For the same reason, a legion of cases—including recent decisions from three other federal circuits—have joined *Gilreath* in concluding that neither the coronavirus nor government orders designed to slow its spread constitutes direct physical loss of or damage to property.  *See*, *e.g.*, *Dakota Girls, LLC v. Phila. Indem. Ins. Co.*, 2021 WL 5144465, at *2 (6th Cir. Nov. 5, 2021) ("Dakota Girls did not suffer dispossession or the destruction of its property, nor did it plead that COVID-19 had materially altered the facilities' condition."); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1143-45 (8th Cir. 2021) (rejecting contention that COVID-19 pandemic or related government restrictions caused physical loss or damage to property under Iowa law); *Mudpie,* 2021 WL 4486509, at *3-*6 (same, applying California law); *Santo's Italian Cafe*, 15 F.4th at 399-407 (same, applying Ohio

14

law); *see also Selane Prods., Inc. v. Cont'l Cas. Co.*, 2021 WL 4496471, at *1 (9th Cir. Oct. 1, 2021) (affirming dismissal under California law where no allegations of viral presence on property and no plausible allegation that stay-at-home orders caused physical loss or damage).  Every state and federal court to have analyzed the issue under Florida law has reached the same conclusion.[5]

---

[5] Courts have issued at least 40 rulings on this issue applying Florida law, all in favor of insurers, and to counsel's knowledge no court applying Florida law has issued a reasoned decision to the contrary.  *See, e.g., Dime Fitness, LLC v. Markel Ins. Co.*, 2020 WL 6691467, at *4 (Fla. Cir. Ct. Nov. 10, 2020); *DAB Dental PLLC v. Main St. Am. Prot. Ins. Co.*, 2020 WL 7137138, at *5 (Fla. Cir. Ct. Nov. 10, 2020); *Mike's Lounge & Package, Inc. v. Wilshire Ins. Co.*, 2021 WL 4859393, at *1 (S.D. Fla. Oct. 18, 2021); *Atma Beauty, Inc. v. HDI Glob. Specialty SE*, 2021 WL 4170476, at *3-*5 (S.D. Fla. Sept. 13, 2021); *Clay Hotel P'ship, Ltd. V, Tokio Marine Kiln Synd. 1880*, 2021 WL 5410243 (S.D. Fla. Nov. 17, 2021); *Frontier Dev., LLC v. Endurance Am. Specialty Ins. Co.*, 2021 WL 4127395, at *2-*3 (S.D. Fla. Sept. 8, 2021); *Map Legacy, Inc. v. Zurich Am. Ins. Co.*, 2021 WL 3928944, at *4-*6 (S.D. Fla. Sept. 1, 2021); *Sun Cuisine, LLC v. Certain Underwriters at Lloyd's London*, 2021 WL 3883920, at *3-*4 (S.D. Fla. Aug. 31, 2021); *Bourgier v. Hartford Cas. Ins. Co.*, 2021 WL 3603601, at *4-*7 (S.D. Fla. Aug. 12, 2021); *Scherder v. Aspen Am. Ins. Co.*, 2021 WL 3550368, at *3-*7 (M.D. Fla. Aug. 11, 2021); *Ice House Pub, Inc. v. Westchester Surplus Lines Ins. Co.*, 2021 WL 3169151, at *2 (M.D. Fla. July 26, 2021); *Mignonette Miami, LLC v. Tokio Marine Specialty Ins. Co.*, 2021 WL 2661152, at *2-*3 (S.D. Fla. June 29, 2021); *Spottswood Companies, Inc. v. Zurich Am. Ins. Co.*, 2021 WL 2515255, at *4-*5 (S.D. Fla. June 14, 2021); *Gio Pizzeria & Bar Hosp., LLC v. Certain Underwriters at Lloyd's, London*, 2021 WL 2767077, at *3-*4 (S.D. Fla. June 3, 2021); *Yellow Strawberry CCDR, Inc. v. Cont'l Cas. Co.*, 2021 WL 2766996, at *3-*4 (S.D. Fla. May 18, 2021); *MCML Holding Co., LLC v. Colony Ins. Co.*, 2021 WL 2766870, at *3 (M.D. Fla. May 12, 2021); *Graspa Consulting, Inc. v. United Nat'l Ins. Co.*, 2021 WL 1540907, at *4-*11 (S.D. Fla. Apr. 16, 2021); *PF Sunset View, LLC v. Atl. Specialty Ins. Co.*, 2021 WL 1341602, at *2-*3 (S.D. Fla. Apr. 9, 2021); *Runway 84, Inc. v. Certain Underwriters at Lloyd's, London*, 2021 WL 2767079, at *2-*5 (S.D. Fla. Mar. 31, 2021); *Royal Palm Optical, Inc. v. State Farm Mut.*

Cafe International argues that the Court should not apply *Mama Jo's* because that case was decided at summary judgment, whereas this case was dismissed on the pleadings. That procedural distinction makes no substantive difference here. Accepting all non-conclusory allegations in the complaint as true and drawing all reasonable inferences in Cafe International's favor, the complaint states no cognizable claim because it alleges no facts establishing what "direct

---

*Auto. Ins. Co.*, 2021 WL 1220750, at *4-*6 (S.D. Fla. Mar. 30, 2021); *AE Mgmt., LLC v. Ill. Union Ins. Co.*, 2021 WL 827192, at *2-*4 (S.D. Fla. Mar. 4, 2021); *Town Kitchen LLC v. Certain Underwriters at Lloyd's, London*, 2021 WL 768273, at *4-*7 (S.D. Fla. Feb. 26, 2021); *15 Oz Fresh & Healthy Food LLC v. Underwriters at Lloyd's London*, 2021 WL 896216, at *3-*8 (S.D. Fla. Feb. 22, 2021); *Cafe La Trova LLC v. Aspen Specialty Ins. Co.*, 519 F. Supp. 3d 1167, 1178-82 (S.D. Fla. 2021); *First Watch Rests., Inc. v. Zurich Am. Ins. Co.*, 2021 WL 390945, at *3-*4 (M.D. Fla. Feb. 4, 2021); *Rococo Steak, LLC v. Aspen Specialty Ins. Co.*, 515 F. Supp. 3d 1218, 1221-24 (M.D. Fla. 2021); *R.T.G. Furniture Corp. v. Hallmark Speciality Ins. Co.*, 2021 WL 686864, at *3 (M.D. Fla. Jan. 22, 2021); *Graspa Consulting, Inc. v. United Nat'l Ins. Co.*, 515 F. Supp. 3d 1249 (S.D. Fla. Jan. 20, 2021); *Webb Dental Assocs. DMD PA v. Cincinnati Indem. Co.*, 2021 WL 800113, at *1 (N.D. Fla. Jan. 15, 2021); *Carrot Love, LLC v. Aspen Specialty Ins. Co.*, 513 F. Supp. 3d 1364, 1366-67 (S.D. Fla. 2021); *Mena Catering, Inc. v. Scottsdale Ins. Co.*, 512 F. Supp. 3d 1309, 1317-18 (S.D. Fla. 2021); *Island Hotel*, 512 F. Supp. 3d at 1326-28; *Digital Age Mktg. Grp., Inc. v. Sentinel Ins. Co. Ltd.*, 512 F. Supp. 3d 1270, 1276-77 (S.D. Fla. 2021); *Edison Kennedy, LLC v. Scottsdale Ins. Co.*, 510 F.Supp.3d 1116, 1122-24 (M.D. Fla. Jan. 4, 2021); *Atma Beauty, Inc. v. HDI Glob. Specialty SE*, 2020 WL 7770398, at *3-*4 (S.D. Fla. Dec. 30, 2020); *Prime Time Sports Grill, Inc. v. DTW 1991 Underwriting Ltd.*, 2020 WL 7398646, at *5-6 (M.D. Fla. Dec. 17, 2020); *SA Palm Beach LLC v. Certain Underwriters at Lloyd's, London*, 2020 WL 7251643, at *4-*5 (S.D. Fla. Dec. 9, 2020); *El Novillo Rest. v. Certain Underwriters at Lloyd's, London*, 2020 WL 7251362, at *5-*6 (S.D. Fla. Dec. 7, 2020); *S. Fla. Ent Assocs., Inc. v. Hartford Fire Ins. Co.*, 2020 WL 6864560, at *10 (S.D. Fla. Nov. 13, 2020).

physical loss of or damage to" property was caused by the alleged temporary presence of coronavirus particles on that property. This Court has already stated that it could "not see how the presence of [coronavirus] particles would cause physical damage or loss to the property." *Gilreath*, 2021 WL 3870697, at *2. Nothing in Cafe International's complaint provides the missing explanation.

On appeal, Cafe International seeks to fill the gap by asserting that the "direct physical" element of loss or damage is satisfied by an event "as evanescent as a virus particle physically settling upon a surface of the premises." Br. 16. That assertion only proves Westchester's point: An "evanescent" particle that merely settles "upon" property does not change the property itself, nor does it require that the property be "repaired, rebuilt or replaced" as would be needed to trigger a "period of restoration."

Tellingly, Cafe International does not seek coverage under the policy's Building and Personal Property Coverage Form, which provides coverage "for direct physical loss of or damage to Covered Property" at Cafe International's restaurant "caused by or resulting from any Covered Cause of Loss." Policy (ECF No. 1-1) at 35. In other words, the policy does not cover only lost Business Income caused by "direct physical loss of or damage to" covered premises, Policy (ECF No. 1-1) at 51, but also the property damage itself, when it results from a covered cause. If Cafe International's property had actually suffered direct

physical loss or damage, Cafe International presumably would have sought coverage under the Building and Personal Property Coverage Form to pay for the costs of repairing or replacing the supposedly lost or damaged property. *See id.* at 45. Cafe International's failure to invoke that coverage tracks its failure to allege the direct physical loss of or damage to its restaurant required to implicate Business Income and Extra Expense coverage as well.

This Court and others have repeatedly recognized that property damage coverage does not apply to surface contamination that can be resolved through standard cleaning methods. *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 574 & n.8 (6th Cir. 2012). By Cafe International's own account, its theory of direct physical loss or damage involves only the "evanescent" presence of a virus "upon" a surface, which can be easily cleaned by ordinary methods. Under *Mama Jo's*, *Gilreath*, and many other cases, there is no coverage under such circumstances, as many district courts in this Circuit have held. *See, e.g.*, *Town Kitchen*, 2021 WL 768273, at *6-*7; *Rococo Steak*, 515 F. Supp. 3d at 1222-23; *R.T.G. Furniture*, 2021 WL 686864, at *3.

## II. CAFE INTERNATIONAL'S COUNTERARGUMENTS LACK MERIT

The district court generously applauded Cafe International for "creativity" and "outside-the-box thinking," but in fact its coverage arguments are the same as those advanced by other insureds. And they are wrong for all the same reasons.

**A.    The Policy Does Not Cover "Loss of Use" Unaccompanied By An Actual, Physical Change**

Citing various dictionary definitions, Cafe International argues that "direct physical loss of" property should be interpreted to include the "loss of use" of the property for a particular purpose, even absent any physical change.  Br. 12-15. Courts—including this Court in *Mama Jo's* and *Gilreath*—have resoundingly rejected this contention.  As the Sixth Circuit has explained, a "loss of use simply is not the same as a *physical* loss."  *Santo's Italian Cafe*, 15 F.4th at 402 (emphasis added).  This follows from the ordinary meaning of the word "physical," which requires some form of tangible alteration to the property.  *Oral Surgeons*, 2 F.4th at 1144 ("[T]here must be some physicality to the loss or damage of property—*e.g.*, a physical alteration, physical contamination, or physical destruction.").  For instance, if authorities temporarily suspend an individual's driver's license, the individual may have temporarily lost use of her car, but no reasonable person would describe the car itself—which has suffered no physical damage or impairment of functionality and remains in her sole possession—as "physically lost."  The same goes for businesses whose operations were temporarily suspended operations due to the COVID-19 pandemic:  owners may have been limited in their ability to use their properties for certain purposes (*e.g.*, to use a restaurant for indoor dining), but that does not mean that those properties were "physically lost" within the ordinary meaning of that phrase.  Cafe International's loss-of-use

argument finds no support in the policy's plain language and courts have routinely rejected it. *See, e.g.*, *Town Kitchen*, 2021 WL 768273, at *4-5; *15 Oz Fresh & Healthy Food*, 2021 WL 896216, at *5; *Sun Cuisine, LLC v. Certain Underwriters at Lloyd's London*, 2020 WL 7699672, at *3 (S.D. Fla. Dec. 28, 2020).

Cafe International's "loss of use" argument also runs headlong into the facts of *Mama Jo's*. Cafe International inexplicably asserts that *Mama Jo's* did not involve "any loss of use of the premises," Br. 28, but it surely did: the insured plaintiff had to "close sections of the restaurant for cleaning." *Mama Jo's*, 823 F. App'x at 880. Although the dust and debris contamination caused a temporary loss of use of portions of the restaurant, the Court held that there was no "physical loss of or damage to" the restaurant, and thus no coverage. That holding cannot be reconciled with Cafe International's "loss of use" argument.

Nor is there any merit to Cafe International's argument that Florida law imposes no "actual change" requirement because cases from *other* jurisdictions have found coverage where "airborne perils" caused a loss of use "without structural injury." Br. 24-26. None of these cases applies Florida law or was even issued by a court within this Circuit. And all are factually distinguishable in any event. In each case finding coverage, the property was infiltrated not by an "evanescent" virus that could be easily wiped away, Br. 16, but by a chemical contaminant—e.g., ammonia, asbestos, methamphetamine odors, toxic gas—that

permeated the property itself, requiring physical repairs to the property before it could be used for *any* purpose.

The decision in *Port Authority of New York & New Jersey v. Affiliated FM Insurance Co.*, 311 F.3d 226 (3d Cir. 2002), is illustrative. The Third Circuit there recognized that by "ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure," citing "[f]ire, water, smoke and impact from another object" as "typical examples of physical damage from an outside source that may demonstrably alter the components of a building and trigger coverage." *Id.* at 235 (quoting 10 Couch on Insurance § 148:46 (3d ed. 1998)). By contrast, the court emphasized, the "mere presence of asbestos" in a building does *not* in itself constitute "physical loss or damage," *id.* at 232, contrary to Cafe International's position here. Rather, asbestos contamination can trigger coverage only when it is so pervasive that the property's "function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable," until it is physically repaired by removal of the asbestos. *Id.* at 236; *see also*, *e.g.*, *Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399, 405 (1st Cir. 2009) (contaminated defective carpeting had to be completely replaced to eliminate noxious odor that "permeated" building). Even if Florida law encompasses that conception of property damage, Cafe International here does not and cannot allege facts establishing that the fleeting presence of the COVID-19

virus made its property useless or uninhabitable absent repairs to or replacement of the property the virus briefly settled upon.

The foregoing cases certainly do not stand for the proposition, urged by Cafe International here, that "direct physical loss" occurs whenever the insured's use of property is diminished by "some existing thing, no matter how small." Br. 22. The policy does not cover business losses caused by "small existing things." Or even losses caused by "large existing things." It only covers business interruption losses and extra expenses when there is "direct physical loss of or damage to" insured property. Policy (ECF No. 1-1) at 51. In that phrase, the adjective "physical" modifies the term "loss," meaning that the *property loss* must be "physical" in nature—not that the policyholder suffered *businesses losses* that can be attributed in some way to a physical "thing," large or small. Otherwise, virtually anything that disrupts the insured's Cafe International's intended use of the property as a restaurant would qualify—from a disruptive patron who scares away customers, to a snowstorm that makes roads impassable, to a local regulator who suspends its liquor license. Each of those forces can be described as an "existing thing," but none of those scenarios involves a physical loss of or damage *to the property itself*. In this Court's words, a regulatory command (even when made by a physical person) that merely disrupts a business's operations, but does

not physically change the property, does not "qualify, to a layman or anyone else, as physical loss." *Gilreath*, 2021 WL 3870697, at *2.

It is no answer to say, as Cafe International does, that the Business Income and Extra Expense provisions here cover economic harms caused by "physical loss *of*" property, rather than "physical loss *to*" property. Br. 37-38. Cafe International argues that "to" and "of" carry different meanings, but it does not explain how that purported difference matters here. And it certainly does not: the policy in *Mama Jo's* used the same "physical loss *of* or damage to" formulation as the policy here, and the court found no coverage on materially identical facts. *Mama Jo's*, 823 F. App'x at 879.

The same goes for Cafe International's argument that the use of the disjunctive "or" rather than "and" supports its argument. Br. 14. If anything, the phrase "direct physical loss of or damage to" property simply confirms that in addition to property *damage*, which may leave the property generally intact but in need of repair, the policy also covers the *total destruction or complete dispossession* "of" the property, requiring the affected property to be rebuilt (e.g., if the restaurant completely burns down) or replaced (e.g., if an insured oven is stolen from the restaurant). *See Santo's Italian Cafe*, 15 F.4th at 404 ("There is no need to read 'physical loss' to include a deprivation of some particular use of a property in order to give the phrase independent meaning. That possibility could

occur whenever a policy holder is deprived of property without any damage to it, say a portable grill or a delivery truck stolen without a scratch.").  In plain English, Cafe International suffered neither a *loss of* its property (which remained fully accessible and in its possession) nor *damage to* its property (which remained physically unaltered).

### B.    *Mama Jo's* Correctly Interpreted Florida Law

Cafe International next contends that the district court erred in following *Mama Jo's* and other federal decisions from Florida.  According to Cafe International, the court instead should have relied on two other pre-pandemic decisions from Florida appellate courts.  Cafe International is incorrect.

To start, Cafe International grossly undersells the authority rejecting its position.  The authority is not merely "lopsided," Br. 24, it is entirely *one*-sided: *every* court, state or federal, to have analyzed these coverage provisions under Florida law in the context of the COVID-19 pandemic, in at least 40 rulings, has rejected Cafe International's argument.  *See supra* note 5.  So has every federal court of appeals and the overwhelming majority of other courts throughout the country.  *See supra* 14-15.

The two pre-pandemic cases cited by Cafe International do nothing to counter the weight of that authority.  In fact, both cases are entirely consistent with

this Court's view that Florida law requires an "actual change" to the insured property to trigger coverage.

The decision in *Azalea, Ltd. v. American States Insurance Co.*, 656 So. 2d 600 (Fla. 1st DCA 1995), involved vandalism of a sewage treatment facility. An unknown chemical substance was poured into the sewage treatment system; the substance then "adhered to the interior and caused the destruction of a bacteria colony which was part of the sewage treatment process," requiring the plaintiff to "completely drain the entire system, steam clean the entire interior of the sewage treatment plant by power steam, and by hand chiseling remove this chemical residue." *Id.* at 601. Unsurprisingly, the court found that this amounted to "physical damage" to the sewage treatment system—the "dumped substance actually covered and adhered to the interior of the structure," destroying the bacteria colony that was "part of" the treatment system itself, and becoming so tightly bonded to the structure that it had to be hand-chiseled out. *Id.* at 602.

*Azalea* exemplifies the kind of "physical damage" to the property itself missing in *Mama Jo's*, *Gilreath*, and this case. As the court repeatedly emphasized, "the chemical residue damaged the facility," "the bacteria colony necessary to the facility's operation was damaged and had to be reseeded," and "there was direct damage to the structure." *Id.* at 601-02. The damage included the physical loss of the bacteria colony, which was "an integral part of the covered

facility," resulting in a tangible alteration to the covered property. *Id.* at 602.
Nothing in the opinion suggests that a mere diminution in use—unaccompanied by
physical loss or physical damage to the bacteria and other system components—
would have been sufficient to trigger coverage.

Cafe International is even worse off relying on *Maspons*, which actually
*establishes* the "actual change" standard in Florida law, as this Court recognized in
*Mama Jo's*, 823 F. App'x at 879 (citing *Maspons*, 211 So. 3d at 1069). *Maspons*
involved a claim for homeowners' insurance coverage for a broken drainpipe in a
home. The appellate court began its analysis by enunciating the controlling rule of
law: because "'[d]irect' and 'physical' modify loss," they "impose the requirement
that the damage be actual." *Maspons*, 211 So. 3d at 1069. Applying that rule to
the case before it, the court agreed that while the drainpipe *itself* was "broken" and
thus physically damaged, *id.* at 1068, there was no coverage for the damaged pipe
because of a "deterioration" exclusion in the policy, as the parties had stipulated,
*id.* at 1069. The question, then, was whether there was any physical loss or
damage *to the house*. The answer was no: there "was no evidence that the water
exiting the pipe had caused any damage to its surroundings," and thus coverage
was not triggered. *Id.* at 1070. The same result follows here a fortiori: in
*Maspons*, there was at least a damaged *component* of the property, whereas here
there is no physical damage to anything at all.

In seeking support from *Maspons*, Cafe International misconstrues the decision. Cafe International focuses on the court's reference to "the failure of the drain pipe to perform its function" in describing the physical damage to the pipe. *Id.* at 1069. According to Cafe International, that reference means that a mere loss of use—the inability of property to perform its function—constitutes a "physical loss," even when there is no physical change to the property at all. Br. 21. Again, Cafe International is wrong. The drainpipe *did* suffer an "actual" physical change—it broke and had to be repaired. *See Maspons*, 211 So. 3d at 1068. The drain pipe ceased being functional, that is, because the pipe corroded and was no longer capable of draining waste water from the house. Here, Cafe International does not allege that it lost use of its property because the property itself failed in a way that made it no longer capable of being used as a commercial enterprise. At all times, Cafe International's property remained functional, including for use as a restaurant. Even assuming environmental and regulatory conditions reduced Cafe International's ability to use the property as a restaurant, there was no actual change to the property itself, just as there was no actual change to the remainder of the house in *Maspons*. For the same reasons there was no coverage there, there is no coverage here.

Cafe International's selective quotation of two cases from the 1980s discussing the general "purpose" of business interruption insurance—in *Ramada*

*Inn Ramogreen, Inc. v. Travelers Indemnity Co. of America*, 835 F.2d 812 (11th Cir. 1988), and *Hotel Properties, Ltd. v. Heritage Ins. Co. of Am.*, 456 So. 2d 1249 (Fla. 3d DCA 1984)—does not advance its cause either. Br. 22-23. To the contrary, *Ramada Inn* and *Hotel Properties* confirm that business income losses are covered only when they are caused by direct physical loss of or damage to property. In *Ramada Inn*, this Court acknowledged that the "purpose of a business interruption policy is to indemnify the insured 'for loss caused by the interruption of a going business *consequent upon the destruction of the building, plant, or parts thereof*,'" and affirmed judgment for the insurer where the diminution in hotel business was unaccompanied by any physical loss or damage to the hotel itself. *Id.* at 814 (emphasis added). That analysis squarely forecloses Cafe International's argument here. And in *Hotel Properties*, a Florida appellate court affirmed a judgment for the insurer, because the insured hotel suffered only a diminution in its business volume caused by a fire at an *adjoining* restaurant that did not damage the hotel itself. 456 So. 2d at 1250. Like the insured in *Hotel Properties*, Cafe International suffered no physical loss of or damage to its insured property, and thus has no valid claim to coverage.

### C. Cafe International's Exclusion-Based Arguments Fail

Faced with overwhelming authority holding that the plain language of its policy does not provide coverage for its losses, Cafe International urges the court

to, in effect, ignore or override the plain meaning of the coverage grants based on the presence or absence of certain *exclusions* in the policy. Br. 39-45.

That argument cannot survive first contact with Florida law. According to the Florida Supreme Court, "the existence or nonexistence of an exclusionary provision in an insurance contract is *not at all relevant* until it has been concluded that the policy provides coverage for the insured's claimed loss." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 740 (Fla. 2002) (emphasis added). In other words, in analyzing Cafe International's coverage claims, the court cannot even *consider* the presence or absence of exclusions until it first determines whether its business losses fall within the policy's affirmative coverage grants. Because they do not, as shown in the prior section, the exclusions are categorically irrelevant.

Cafe International's specific exclusion-based arguments fail for other reasons as well. Cafe International first contends that the presence of a "pollutant" exclusion in the "period of restoration" provision means that "direct physical loss of or damage to" need not entail an actual tangible alteration to the property. Br. 39-40. That argument is waived—nowhere did Cafe International cite this provision in urging coverage below. The argument is also wrong. Cafe International focuses on the language in the "period of restoration" provision excluding the time necessary to comply with a regulation requiring the insured to

"test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants.'" Policy (ECF No. 1-1) at 59 ¶ F(3). Observing that this exclusion contemplates "property damage" caused by contamination from "pollutants," Cafe International leaps to the conclusion that "property damage" must include contamination by a virus. The error is obvious: the exclusion necessarily applies only when a "pollutant" has caused *otherwise covered* property damage. There are, of course, myriad "pollutants" that can damage property by causing a tangible alteration to it—"pollutant" is defined to include "any solid, liquid, gaseous or thermal irritant or contaminant." Policy (ECF No. 1-1) at 59 ¶ F(4). Many chemicals can corrode metal, peel paint, or warp wood; a virus cannot do any of those things, or anything remotely similar.

Cafe International next cites the policy's asbestos and bacteria exclusions, arguing that they would be unnecessary if "property damage" required a tangible alteration to property. Br. 43-44. As just shown, however, under Florida law the existence of these exclusions is categorically irrelevant to interpretation of the language in the policy's affirmative coverage grants. *See supra* at 29. Cafe International's invocation of these exclusions in any event wrongly assumes that a virus necessarily affects property the same way as bacteria or asbestos. In fact, asbestos and bacteria are both capable of working an actual change to property necessitating repairs to or replacement of that property. *See*, *e.g.*, *Port Auth.*, 311

F.3d at 236.  Asbestos or bacteria may not *always* affect property that way, but when they do, the exclusions ensure that the damage is not covered.  Cafe International alleges no facts establishing that the COVID-19 virus ever causes comparable tangible alterations to property.

Cafe International nonetheless insists that because some *other* policies issued to *other* insureds do include express virus exclusions, *this* policy must cover COVID-19-related losses because it lacks an equivalent express exclusion.  But just as the presence of an exclusion cannot create coverage, neither can the "absence of an exclusion."  *Siegle*, 819 So. 2d at 740.  The Florida Supreme Court has squarely rejected Cafe International's position as "entirely without merit" and "directly contrary to the tenets of insurance contract interpretation," which hold that "the absence of an exclusion" does not itself mean coverage exists.  *Id.*

This argument also impermissibly depends on evidence outside the policy's four corners, i.e., the terms of other policies issued to other insureds in other circumstances.  The policy issued to Cafe International must be construed on its *own* terms, and under Florida law, a court cannot use parol evidence to manufacture an ambiguity in an insurance contract.  *Vencor Hosps. v. Blue Cross Blue Shield of R.I.*, 284 F.3d 1174, 1179-80 (11th Cir. 2002).

For these reasons, courts have repeatedly rejected similar efforts by insureds to establish coverage for COVID-19-related losses based on the lack of a virus

exclusion in a particular policy.  Like the Florida Supreme Court, these courts have recognized that "exclusionary provisions plainly cannot be used to establish coverage in the first instance."  *Café La Trova*, 2021 WL 602585, at *6 n.7; *see Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, 499 F. Supp. 3d 670, 678 n.4 (N.D. Cal. 2020); *El Novillo Rest. v. Certain Underwriters at Lloyd's, London*, 2020 WL 7251362, at *4 (S.D. Fla. Dec. 7, 2020); *Kamakura, LLC v. Greater N.Y. Mut. Ins. Co.*, 2021 WL 1171630, at *8 (D. Mass. Mar. 9, 2021); *4431, Inc. v. Cincinnati Ins. Cos.*, 2020 WL 7075318, at *9 n.18 (E.D. Pa. Dec. 3, 2020); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 694 n.3 (N.D. Ill. 2020); *Promotional Headwear v. Cincinnati Ins. Co.*, 504 F. Supp. 3d 1191, 1202 n.66 (D. Kan. 2020); *Bel Air Auto Auction, Inc. v. Great N. Ins. Co.*, 2021 WL 1400891, at *10 (D. Md. Apr. 14, 2021).  Because Cafe International cannot allege facts establishing Business Interruption or Extra Expense coverage in the first place, the absence of a virus exclusion is irrelevant.

To be clear, this does not mean that virus exclusions in other policies would never serve any purpose.  The role of a virus exclusion in a particular policy would depend on that policy's specific coverage provisions—all the more reason the Court cannot construe *this* policy's provisions based on the presence of a virus exclusion in *other* policies not before the Court.  And depending on precisely what other policies cover, there are other situations in which a virus-related loss could

fall within affirmative coverage grants and thus be subject to a virus exclusion.

For example, one court held that where the insured property was livestock, a virus

that caused illness and death to the animals constituted direct physical damage to

or loss of the property. *See Curtis O. Griess & Sons, Inc. v. Farm Bureau Ins. Co.*

*of Neb.*, 528 N.W.2d 329, 331 (Neb. 1995). The fact that a virus exclusion might

exclude coverage in such situations obviously does not mean that all virus-related

losses are automatically covered in all *other* policies, without regard to their

affirmative coverage provisions. The affirmative insuring agreements determine

coverage in the first instance, and they do not provide coverage here.

## III.   THERE IS NO BASIS FOR CERTIFICATION TO THE FLORIDA SUPREME COURT

Faced with overwhelming authority rejecting its arguments, Cafe

International makes a halfhearted request for certification to the Florida Supreme

Court. Br. 47-50. But Cafe International does not even identify what question of

law this Court should ask, and it provides no rationale that would justify

certification. There is no division of authority on any of the legal issues necessary

to resolve this case, which is a straightforward matter of contractual interpretation.

To certify a question to the Florida Supreme Court, the legal question must

be dispositive of the action and one upon which the Florida Supreme Court has

issued no controlling precedent. Fla. Const. art. V, § 3(b)(6); Fla. Stat. § 25.031.

The decision to certify is discretionary, and certifying every question of state law

would be an abuse of this Court's discretion. *Weiss v. City of Gainesville*, 462 F. App'x 898, 908 (11th Cir. 2012). This Court thus reserves certification for legal questions upon which there is "substantial doubt" as to the correctness of the answer. *Toomey v. Wachovia Ins. Servs., Inc.*, 450 F.3d 1225, 1231 (11th Cir. 2006).

There is no substantial doubt about the legal questions here. This Court has already opined on the meaning of the exact coverage provision at issue here under Florida law in *Mama Jo's* and on an indistinguishable provision under Georgia law in the COVID-19 context in *Gilreath*. Neither decision necessitated certification to state courts. Indeed, this Court has cited "interpretation of a clause in an insurance contract" as an example of a question that would ordinarily *not* merit certification. *Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 275 (5th Cir. 1976). And the Florida cases interpreting this type of insurance provision are completely in accord with this Court's rulings requiring an "actual change." *See Vazquez v. Citizens Prop. Ins. Corp.*, 304 So. 3d 1280, 1284-85 (Fla. 3d DCA 2020); *Maspons*, 211 So. 3d at 1069; *Dime Fitness*, 2020 WL 6691467, at *4; *DAB Dental PLLC*, 2020 WL 7137138, at *5. Where this Court has already spoken on an issue and all state law authority is in accord, certification is unwarranted.

## CONCLUSION

For the foregoing reasons, the judgment should be affirmed.

Dated:  December 1, 2021                    Respectfully submitted,

                                            */s/ Jonathan D. Hacker*

                                            Jonathan D. Hacker
                                            Jeremy R. Girton
                                            O'MELVENY & MYERS LLP
                                            1625 Eye St., NW
                                            Washington, DC 20006
                                            (202) 383-5300
                                            jhacker@omm.com
                                            jgirton@omm.com

                                            Steven J. Brodie (FL Bar #
                                            333069)
                                            sbrodie@carltonfields.com
                                            Heidi Hudson Raschke (FL Bar #
                                            61183)
                                            hraschke@carltonfields.com
                                            Andrew K. Daechsel (FL Bar #
                                            118157)
                                            akdaechsel@carltonfields.com
                                            CARLTON FIELDS, P.A.
                                            2 MiamiCentral, Suite 1200
                                            700 NW 1st Avenue
                                            Miami, Florida 33136
                                            Telephone:  (305) 530-0050
                                            Facsimile:  (305) 530-0055

                                            *Attorneys for Defendant-Appellee*
                                            *Westchester Surplus Lines*
                                            *Insurance Company*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Circuit Rule 32-4 and Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,566 words. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it uses a proportionally spaced typeface and Times New Roman 14-point font.

Dated: December 1, 2021        By:   */s/ Jonathan D. Hacker*
                                 Jonathan D. Hacker

*Attorney for Defendant-Appellee*
*Westchester Surplus Lines Insurance*
*Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the appellate CM/ECF system.

Dated: December 1, 2021               By:   */s/ Jonathan D. Hacker*
                                                     Jonathan D. Hacker


*Attorney for Defendant-Appellee*
*Westchester Surplus Lines Insurance*
*Company*